**Federal Defenders**
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124  Fax: (914) 948-5109

David E. Patton
*Executive Director
and Attorney-in–Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

September 9, 2022

The Honorable Nelson S. Román
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY  10601

      Re:    United States v. Rainiel Del Rosario Rojas
                22 CR 278 (NSR)

Dear Honorable Román:

    Rainiel Del Rosario Rojas (herein Mr. Rosario Rojas) is profoundly remorseful.  When he was arrested, he acknowledged his unlawful conduct and, following his release, Mr. Rosario Rojas has expressed regret to his family, friends, and colleagues.  Significantly, Mr. Rosario Rojas also recognized that he needed help: he immediately sought help through sex-offender treatment, even paying out-of-pocket for the treatment.  This case represents Mr. Rosario Rojas's first arrest and, in light of his immigration status, Mr. Rosario Rojas will likely soon be deported.  Under these circumstances, and especially in light of Mr. Rosario Rojas's otherwise exemplary history and characteristics, this Court should impose a non-incarceratory sentence.

***Mr. Rosario Rojas's Childhood Teenage Years in the Dominican Republic***

    Mr. Rosario Rojas was born in Santo Domingo, Dominican Republic, in 1994.  PSR ¶ 55.  He was raised by his mother, Ana Teresa Rojas Heredias.  *Id.* at 58.  Mr. Rosario Rojas had minimal contact with his father and spent his childhood living in a rented, three-bedroom home with his mother, step-father, three maternal half-siblings and two of his step-father's children.  *Id.*  He attended school, graduated from a technical high school that focused on computers and engineering, and at age nineteen, began working for a supermarket.  Krueger Report, P. 2 (Exhibit A).

Case 7:22-cr-00278-NSR   Document 41   Filed 09/09/22   Page 2 of 15

The Honorable Nelson S. Román                                        Page **2** of **15**
United States v. Rainiel Del Rosario Rojas        Sentencing Submission (September 9, 2022)

### *Mr. Rosario Rojas's Leaves the Dominican Republic and Quickly Finds Work in the United States*

While he had a job in the Dominican Republic, Mr. Rosario Rojas hoped for better economic opportunities. PSR ¶ 60. So in 2015 when Mr. Rosario Rojas learned that his father was moving to the United States, Mr. Rosario Rojas – then twenty year's old – took a risk and, with his father, moved to the United States. Krueger Report, P. 2, PSR ¶ 60. Mr. Rosario Rojas's paternal grandmother had already emigrated to the United States, so she sponsored Mr. Rosario Rojas, who was given permission to legally entered the United States via familial sponsorship. PSR ¶ 60. Initially, Mr. Rosario Rojas lived with his father and other relatives in Lawrenceville, Georgia. PSR ¶ 62, Krueger Report, P. 2. While in Georgia, Mr. Rosario Rojas worked at a supermarket where he earned $7.50 an hour cleaning floors. PSR ¶ 83-84, Krueger Report, P. 2.

Roughly seven months after moving to Georgia, Mr. Rosario Rojas learned that he'd have better economic opportunities in New York, so in November, 2015, Mr. Rosario Rojas moved to the Bronx. PSR ¶ 62, Krueger Report, P. 2. Initially, he worked for a restaurant chain in Manhattan, cleaning the eateries after hours. PSR ¶ 81-82. Then in 2016, Mr. Rosario Rojas began working for Get Real Surfaces Inc., a family run business that focuses on concrete installation for residential and commercial customers. PSR ¶ 79-80. Mr. Rosario Rojas excelled at Get Real Surfaces, Inc.. *Id*. He was promoted to foreman and is described as an "exemplary employee and coworker, displaying an exceptional level of responsibility and reliability." *Id*. In a letter written to Your Honor, Avis Bishop, Mr. Rosario Rojas's boss at Get Real Surfaces, Inc., describes Mr. Rosario Rojas as "a good person" who has "has displayed an exceptional level of responsibility and reliability." Avis Bishop Letter (attached within Exhibit B, Letters). Ms. Bishop explains that Mr. Rosario Rojas has "a bright future with [our company]. *Id*. Indeed, Ms. Bishop is so

fond and trusting of Mr. Rosario Rojas that she signed his bond and vowed to "support his rehabilitation so he can continue to contribute to our society in a positive way." PSR ¶ 79, Avis Bishop Letter.

### *The Offense and Immediate Acceptance of Responsibility*

On March 9, 2021, law enforcement officers recovered electronic devices at Mr. Rosario Rojas's home. PSR ¶ 23. Those devices contained child pornography. PSR ¶ 24-27. Mr. Rosario Rojas was arrested, immediately admitted his unlawful conduct to law enforcement, and voluntarily entered into treatment *that had not been court ordered*. PSR ¶ 24-28.[1] Mr. Rosario Rojas then waived indictment, waived discovery, and pleaded guilty. PSR ¶ 3.

### *Mr. Rosario Rojas's Impressive Post Arrest Conduct*

Mr. Rosario Rojas has spent the past eighteen months under pretrial supervision. PSR ¶ 4. As verified by Probation, Mr. Rosario Rojas has been fully compliant with the terms of his release. *Id.* He's maintained employment and worked to better himself through voluntary sex-offender treatment. PSR ¶ 64-66, 78-80.

---

[1] Mr. Rosario Rojas initially paid for the therapy through his insurance, with a co-pay of his own. But, his insurance later stopped covering sex-offender treatment and Mr. Rosario Rojas could not afford the regular payment. As such, on February 17, 2022 (roughly eleven months after his arrest), Mr. Rosario Rojas petitioned the Court to order sex-offender treatment. *See* February 17, 2022 Endorsed Letter Motion (attached as Exhibit C), PSR ¶ 64-65. That request was granted, which enabled Mr. Rosario Rojas to continue weekly treatment sessions through a contract with Pretrial Services. *Id.*

Case 7:22-cr-00278-NSR  Document 41  Filed 09/09/22  Page 4 of 15

The Honorable Nelson S. Román                                    Page **4** of **15**
United States v. Rainiel Del Rosario Rojas     Sentencing Submission (September 9, 2022)

### *The Most Appropriate Sentence:  Time Served*

As Your Honor is well aware, in selecting a sentence this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." *Id.* In *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), the Second Circuit explained that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, **it must choose the lower sentence**. *See id*. at 142 (observing that where a guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

In this case, as recognized by Probation, Mr. Rosario Rojas is worthy of a significant variance.  PSR P. 24-25.  This is Mr. Rosario Rojas's first arrest and, while his conduct was certainly unlawful, Mr. Rosario Rojas has shown clear remorse, has sought treatment, and is not a danger.  Moreover, Mr. Rosario Rojas's history and characteristics justify leniency.

    A.    <u>The Court Should Not Give Deference to USSG § 2G2.2</u>

"Post-*Booker*, judges are invited to question whether a particular guideline properly reflects the considerations laid out in 18 U.S.C. § 3553(a)".  *Rita v. United States*, 551 U.S. 338, 351, 357 (2007).  Thus, a district judge may determine that a particular guideline reflects unsound judgment, does not treat defendant characteristics the proper way, or that a different sentence is appropriate regardless.  <u>Id</u>.  Further, judges "may vary [from the Guidelines] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v.*

Case 7:22-cr-00278-NSR    Document 41    Filed 09/09/22    Page 5 of 15

The Honorable Nelson S. Román                                              Page **5** of 15
United States v. Rainiel Del Rosario Rojas       Sentencing Submission (September 9, 2022)

*United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citations omitted).

As the Second Circuit forcefully stated in *United States v. Dorvee*, "District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under §2G2.2 – ones that can range from non-custodial sentences to the statutory maximum – bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." 616 F.3d 174, 188 (2d Cir. 2010); *see also id*. at 184 (U.S.S.G. § 2G2.2 is "fundamentally different from most and [] unless applied with great care, can lead to unreasonable sentences."). When the Guidelines were first enacted, simple possession of child pornography was not a federal crime. *See* Carol S. Steiker, Lessons from Two Failures: Sentencing for Cocaine and Child Pornography Under the Federal Sentencing Guidelines in the United States, 76 Law & Cont. Problems 27, 37 (2013) (detailing history of child pornography Guideline). The 1987 version of § 2G2.2 addressed receiving or trafficking in child pornography set a base offense level of 13, and only contained one potential two-point enhancement for images involving children under the age of 12. If Mr. Rosario Rojas had been sentenced under those Guidelines, his Offense Level would be 12 and his applicable Guidelines would be between 6 and 12 months.[2]

From 1987 forward, however, this Guidelines were repeatedly amended at the direction of one political branch of government, without the benefit of the Sentencing Commission's expertise and often in direct contravention of the Commission's recommendations. *See Dorvee*, 616 F.3d at 184-86; Steiker, supra, at 37-41. For example, in 1990 the Commission recommended lowering the base

---

[2] This estimate is based on a base offense level of 13, a two-point enhancement for possessing an image of a minor under twelve, and a three-point reduction for acceptance of responsibility. *See* § 2G2.2 of the 1987 Guidelines.

offense level to 10 and treating transporting, receiving and the newly-created offense of possession equally. Steiker, supra, at 38; *see also United States v. Grober*, 624 F.3d 592, 605 (3d Cir. 2010) (summarizing history of the Guideline). This recommendation was based on the Commission's interviews with judges, prosecutors and probations officers – all of which tended to indicate that the offense level of 13 was too high. Steiker, supra, at 38. Surveyed judges specifically opined that child pornography offenders with "no significant criminal history or future likelihood of acting out should receive straight probationary periods." U.S.S.C., The History of the Child Pornography Guidelines (Oct. 2009), at 16. In a pattern that would be repeated over the coming years, Congress ignored the Commission's recommendations and instead directed the promulgation of harsher and more punitive Guidelines. *See Dorvee*, 616 F.3d at 185-86. Congressional amendments both increased the base offense level and added numerous enhancements. These enhancements, such as the use of a computer, were often compelled in opposition to the Commission's recommendations, lacked any empirical basis, and were "all but inherent to the crime of conviction." *Dorvee*, 616 F.3d at 186. [3]

Following *Dorvee* and other criticism of the child pornography guideline from courts and commentators across the country, the Sentencing Commission released a report to Congress on the child pornography Guidelines for nonproduction offenders. *See* U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012) ("USSC Report"). The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the Guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id*. at iii, xi; id. at 209, 323. It explained that "technological changes

---

[3] Several of the enhancements specifically criticized by the Court of Appeals in *Dorvee* are enhancements that apply in this case, i.e., for (1) an image with a prepubescent minor, (2) use of a computer, and (3) 600 or more images. *See Dorvee*, 616 F.3d at 186.

have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id.* at 6. Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," id. at 323. The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." *Id.*; *see also id.* at 321. It asked Congress to enact legislation to provide it authority to amend this Guideline. *Id.* at xviii, 322.

In 2017, the Second Circuit extended the reasoning of *Dorvee* and the USSC Report in *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017). According to *Jenkins*, "[s]ince the Commission has effectively disavowed § 2G2.2, it should be clearer to a district court than when we decided *Dorvee* that this Guideline 'can easily generate unreasonable results.'" *Jenkins*, 854 F.3d at 190 (quoting *Dorvee*, 616 F.3d at 188)(holding that a child pornography sentence within the Guidelines was substantively unreasonable).

Turning to the Guidelines in this case, Mr. Rosario Rojas is facing enhancements that are not worthy of deference. First, Mr. Rosario Rojas is facing an enhancement under USSG § 2G2.2(b)(6) because he used a computer. PSR ¶ 39. This enhancement, which raises his Guidelines by between twelve and fifteen months, is problematic because nearly every defendant charged with possessing child pornography uses a computer. *See Dorvee*, 616 F.3d at 186. Similarly, this case involves a two-point enhancement because Mr. Rosario Rojas utilized a Peer-to-Peer computer system. PSR ¶ 38. As such, Mr. Rosario Rojas is subject to this

Case 7:22-cr-00278-NSR   Document 41   Filed 09/09/22   Page 8 of 15

The Honorable Nelson S. Román                                   Page **8** of **15**
United States v. Rainiel Del Rosario Rojas    Sentencing Submission (September 9, 2022)

"distribution" enhancement even though there is no evidence that he actively or intentionally sent images. *See United States v. Farney*, 513 Fed. Appx. 114 (2d Cir. 2013) ("As even [the defense] concedes . . . placing child pornography files in a shared folder on a peer-to-peer file-sharing network constitutes distribution under USSG § 2G2.2, even if no one actually obtains an image from the folder.") Finally, the five-point enhancement for the number of images – which raises Mr. Rosario Rojas's Guidelines by twenty-six to thirty-two months – is problematic because, as recognized in *Dorvee*, "the large number of images possessed by individuals convicted of child pornography likely stems from the fact that the Guidelines count each video as 75 images." 616 F.3d at fn 9.

In sum, and as exemplified by Probation's request for a significant variance and the nearly universal criticism of the applicable Guidelines, the Guidelines in this case are not worthy of deference.

> B. <u>The Nature and Circumstances of Mr. Rosario Rojas's Possession Do Not Compel Incarceration.</u>

Mr. Rosario Rojas downloaded child pornography on his computer using Peer to Peer computer software. This was unlawful and merits prosecution and punishment. But incarceration would amount to a sentence that is greater than necessary because Mr. Rosario Rojas is already facing significant consequences due to his unlawful conduct. As a result of this conviction, Mr. Rosario Rojas will likely face detention as part of a seemingly inevitable deportation proceeding. PSR ¶ 60. Even if he somehow is able to avoid deportation, Mr. Rosario Rojas will still face consequences because he will forever be labeled a "sex offender" with significant SORA requirements. Mr. Rosario Rojas wants nothing more to stay in the United States so that he can continue to support his family, so his likely deportation is punishment enough.

To be clear, child pornography is illegal and merits some punishment.

But Mr. Rosario Rojas did not attempt to contact or meet up with any minors, did not produce the pornography and he is genuinely remorseful for his conduct and he actively sought treatment and therapy. Under these circumstances, and with recognition that incarceration would be more difficult and riskier for Mr. Rosario Rojas than other defendants, incarceration would amount to an excessive sentence that is greater than necessary. *See United States v. Parish*, 308 F.3d 1025, 1028 (9th Cir. 2002) (affirming a below guidelines sentence based, in part, on the district court's belief that "the nature of the offense . . . increas[ed] the [defendant's] susceptibility to abuse [in prison].")

    C.    <u>Mr. Rosario Rojas's History and Characteristics Support a Non-Incarceratory Sentence.</u>

Mr. Rosario Rojas's life history demonstrates that jail is unnecessary. Mr. Rosario Rojas has never before been in trouble and, when confronted with his unlawful activity, he confessed to law enforcement, waived prosecution by indictment and pleaded guilty without filing motions or requesting discovery. PSR ¶ 28, 49-51. He also recognized that he needed help and sought sex-offender treatment, initially paying out of pocket until he could no longer afford the expense. PSR ¶ 64-65. This demonstrates that Mr. Rosario Rojas is remorseful and suggests – strongly – that he is not a danger. *See* Letter from Mr. Rojas (attached as Exhibit D).

As noted by Probation, Mr. Rosario Rojas was examined by Dr. Richard Krueger, a psychiatrist with a specialty in paraphilic disorders affiliated with Columbia University and the New York State Psychiatric Institute.[4] PSR ¶ 66. *See* Curriculum Vitae of Richard Krueger, MD (attached as Exhibit E). Dr. Krueger

---

[4] Dr. Krueger regularly consults for the New York States Office of Mental Health, often in cases involving sex offenders.

Case 7:22-cr-00278-NSR   Document 41   Filed 09/09/22   Page 10 of 15

The Honorable Nelson S. Román                                    Page **10** of 15
United States v. Rainiel Del Rosario Rojas     Sentencing Submission (September 9, 2022)

evaluated Mr. Rosario Rojas and concluded that he was not likely to reoffend. Krueger Report (attached as Exhibit A). Dr. Krueger noted that Mr. Rosario Rojas was "extremely chagrined by his arrest and ashamed of his behavior," and that he is "an excellent candidate for treatment." *Id*. P. 10. He added,

> [Mr. Rosario Rojas's] risk of another sexual crime is low or very low according to 5 actuarial instruments used to assess such risk. . . He has no mental health or substance use disorders that would increase his risk. Additionally, he has a history of substantial sexual interest and behavior involving adult females and a history of on his own accord stopping his viewing of child pornography. . . All of these factors suggest that he has good control over his sexual behavior and are a positive factor for therapy. . . . Mr. [Rosario] Rojas could in my opinion continue to be in the community and would present at most a remote risk." *Id*. P. 11.

Mr. Rosario Rojas's background also merits leniency. As noted by Dr. Krueger, Mr. Rosario was victimized when, at seven-year's old, an older child forced him to engage in sexual activity. *Id*. P. 10. This, Dr. Krueger notes, "would clearly qualify as sexual abuse by an older child. It should also be noted that Mr. [Rosario] Rojas's apparent sexual interest in minor females could well be traced to this incident." *Id*. Put simply, Mr. Rosario Rojas's childhood victimization is mitigating.

Also relevant, Mr. Rosario Rojas is a devoted to his family. Clint Haimerl, a colleague and supervisor who works with Mr. Rosario Rojas, explains that Mr. Rosario Rojas

> came to the United States to work and provide for his family back in the Dominican Republic. He has lived on his own, taking care of his own basic needs and sending money back for his mother. . . As far as I know and from what I see how he lives his life, he has not bought or wasted any money on himself or others while here in the United States. This shows his commitment to taking care of his mother and rest of his family. Clint Haimerl Letter (attached within Exhibit B).

Case 7:22-cr-00278-NSR   Document 41   Filed 09/09/22   Page 11 of 15

The Honorable Nelson S. Román                                    Page **11** of **15**
United States v. Rainiel Del Rosario Rojas    Sentencing Submission (September 9, 2022)

Similar sentiments regarding Mr. Rosario Rojas's devotion to his family are expressed in letters from his sister, Wildys Ramos Rojas, and his stepfather, Feliz Matos Perez (attached within Exhibit B). This selflessness and devotion to others justifies leniency. *See Rita v. United States,* 551 U.S. 338, 364-365 (2007) (Stevens, J., concurring) ("Matters such as . . . charitable, or public service are not ordinarily considered under the Guidelines [but are] matters that § 3553(a) authorize the sentencing judge to consider."); *United States v. Serafini*, 233 F.3d 758, 773, 774 (3d Cir. 2000)(downward departure appropriate given the defendant's "generosity with his time as well as his money."); *United States v. Tomko*, 562 F.3d 558, 572 (3d Cir. 2009) (affirming variance to a sentence of probation due largely to the defendants "exceptional" charitable acts and good works); *United States v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008) (affirming a sentence of three months incarceration and 24 months supervised release from a recommended guideline sentence of 60 months imprisonment based in part on the defendant's "charitable work, community service, generosity with time, and spiritual support and assistance to others"); See other cases upholding downward departure for good works: *United States v. Ali*, 508 F.3d 136, 150 & n.19 (3d Cir 2007); *United States v. Cooper*, 394 F.3d 172, 177, 178 (3d Cir. 2005); *United States v. Woods*, 159 F.3d 1132, 1136 (8th Cir. 1998).

Mr. Rosario Rojas's exemplary work history is also relevant and justifies a non-custodial sentence. Avis Bishop, Mr. Rosario Rojas's boss, trusts him so much that she was willing to sign his bond. PSR ¶ 79-80. In her letter to Your Honor, she explains that Mr. Rosario Rojas is an

> exemplary employee and co-worker and has displayed an exceptional level of responsibility and reliability. . .I was asked to personally sign a bond for him, and honestly, there are very few people that I would be comfortable doing that for. I had to consider many things, and mostly I relied on my conviction that he is a good person. Ray has proven over and over that he is an honest and trustworthy person. He has always conducted himself

Case 7:22-cr-00278-NSR   Document 41   Filed 09/09/22   Page 12 of 15

The Honorable Nelson S. Román                                              Page **12** of **15**
United States v. Rainiel Del Rosario Rojas    Sentencing Submission (September 9, 2022)

> with a high degree of earnestness. In fact, I have great concern that his earnest nature would be damaged by incarceration. What I really want to convey is that I know him and although he has admittedly made a mistake, putting him into the criminal justice system would serve no good purpose. . . Ray is a special person; I am willing to support his rehabilitation so he can continue to contribute to our society in a positive way. Avis Bishop Letter (attached within Exhibit B).

D.   The Remaining Sentencing Factors Justify Leniency

Mr. Rosario Rojas has been specifically deterred. Because of his conduct, Mr. Rosario Rojas was arrested and has been under the supervision of PreTrial Services for eighteen months. Mr. Rosario Rojas is extremely remorseful and is understandably furious that he has put himself in the situation where he may be deported and sent to prison. Research shows that a more severe sentence does not lead to greater specific deterrence for individual defendants. See The Honorable Peggy Fulton Hora & Theodore Stalcup, *Drug Treatment Courts in the Twenty-First Century: The Evolution of the Revolution in Problem-Solving Courts*, 42 GA. L. REV. 717, 724 (2008). The same can be said for general deterrence. Studies have proven that more severe sentences do not result in greater general deterrence. Michael Tonry, Purposes and Functions of Sentencing, 34 CRIME AND JUSTICE REVIEW: A REVIEW OF RESEARCH 28-29 (2006) ("[I]ncreases in severity of punishment do not yield significant (if any) marginal deterrent effects. . . . Three national Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."). It is the certainty of being prosecuted rather than the severity of punishment that deters crime. See Nat'l Inst. of Just., Five Things About Deterrence*,* Jun. 6, 2016. The fact that Mr. Rosario Rojas was arrested, prosecuted, convicted and sentenced, will provide sufficient general deterrence; a term of incarceration is not required for an individual who, like Mr.

Case 7:22-cr-00278-NSR   Document 41   Filed 09/09/22   Page 13 of 15

The Honorable Nelson S. Román                                          Page **13** of **15**
United States v. Rainiel Del Rosario Rojas    Sentencing Submission (September 9, 2022)

Rosario Rojas, has done well on pre-trial release and has never before been incarcerated or even accused of a crime.

While the proposed sentence would avoid incarceration, a sentence involving community service and post-release supervision is a significant punishment for Mr. Rosario Rojas, a first time offender who has never before been incarcerated or subjected to the criminal justice system. Due to his unlawful actions, Mr. Rosario Rojas will forever be brandished a "criminal" and will face a lifetime of the "collateral" consequences relating to his conviction, including the sex-offender registry. This – combined with mandatory community service and supervised release – constitute sufficient punishment. *See United States v. Mateo*, 299 F. Supp.2d 201, 210 (S.D.N.Y. 2004) (beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal convictions, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement.).

Finally, the proposed sentence would not create a sentencing disparity. Non-custodial sentences are common in child pornography cases. The following cases all had significant Guidelines, and all resulted in non-incarceratory sentences:

- *United States v. Pamperien*, 20 Cr 275 (NSR) (2022): time served, Guidelines Range of 51-63 months. upon his release, he immediately sought help through sex-offender treatment
- *United States v. Bennett Sprecher*, 19 CR 749 (JPO) (2021); five years' probation, Guidelines range 78-97 months
- *United States v. Abraham Hernandez*, 19 CR 97 (JSR) (2021); time served (no time) and five years of supervised release, Guidelines range 136-168 months
- *United States v. Jose Flores*, 18 CR 207 (ALC) (2020); time served (no time) and five years of supervised release, Guidelines range 97-121 months

- *United States v. Darryl Bowie*, 17 CR 790 (RA) (2019); time served (no time) and five years of supervised release, Guidelines range 78-97 months
- *United States v. Kyle Lorber*, 19 CR 51 (RMB) (2019); five years' probation, Guidelines range 78-97 months
- *United States v. Charles Garcia*, 17 Cr. 532 (PAE) (2018): time served (no time) with three months in a halfway house and seven years supervised release, Guidelines range 78-97 months
- *United States v. Edmund Duffy*, 17 Cr. 30 (KBF) (2017): five years' probation and community service, Guidelines range 78 to 97 months
- *United States v. Roland Gabriel*, 16 Cr. 765 (KBF) (2017): three years' probation; Guidelines range 78 to 97 months
- *United States v. Matthew Sauer*, 16 Cr. 565 (CS) (2017): time served (no time) and five years' supervised release; Guidelines range 78 to 97 months
- *United States v. Ivan Rivera Gallegos*, 14 Cr. 432 (JPO) (2017): time served (no time) and three years' supervised release; Guidelines range 78 to 97 months
- *United States v. Jose Colon*, 14 Cr. 660 (KMW) (2016): time served (no time) and five years' supervised release; Guidelines range 87-108 months
- *United States v. Scott Meyer*, 14 Cr. 183 (JGK) (2016): five years' probation and six months' community confinement; Guidelines range 78 to 97 months
- *United States v. Angelo Trinidad*, 14 CR 537 (NRB) (2015): time served (no time) and five years' supervised release; Guidelines range 78 to 97 months
- *United States v. Daniel Pinero*, 14 Cr. 341 (AJN) (2015): time served (no time) and three years' supervised release with one year of home confinement; Guidelines range 78 to 97 months
- *United States v. Patrick Colon*, 12 Cr. 462 (VB)(2013): time served (no time) and five years' supervised release; Guidelines range 63-78 months
- *United States v. Christopher Ressa*, 11 Cr. 939 (RPP) (2013): time served (around three days) and supervised release; Guidelines range of 78-97 months
- *United States v. Leonardo Morel-Baca*, 11 Cr. 427 (DAB) (2012): time served (no time) and five years' supervised release; Guidelines range 78 to 97 months

Case 7:22-cr-00278-NSR   Document 41   Filed 09/09/22   Page 15 of 15

| | |
|---|---|
| The Honorable Nelson S. Román | Page **15** of **15** |
| United States v. Rainiel Del Rosario Rojas | Sentencing Submission (September 9, 2022) |

\*   \*   \*

There is nothing to be gained by a draconian sentence in this case, especially in light of Rojas's remorse, his sympathetic past, his speedy acceptance of responsibility and the tremendous support he has from his colleagues. For the reasons set forth above, I respectfully ask that the Court to impose a non incarceratory sentence.

Thank you for your consideration of this request.

Respectfully,

//s

Benjamin Gold
Assistant Federal Defender

cc:   Assistant U.S. Attorney Steven Kochevar